TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00527-CV







In re Sun Communications, Inc.







ORIGINAL PROCEEDING FROM BELL COUNTY




PER CURIAM

 Relator Sun Communications, Inc. ("Sun") files its motion for emergency relief and
petition for writ of mandamus. (1) See Tex. R. App. P. 52.1, 52.10. We conditionally grant Sun's
petition and order the trial court to compel arbitration in accordance with the parties' contract. We
further order that the trial of the cause, currently set for September 9, 2002, is stayed pending
resolution of the arbitration.

 On February 6, 1996, Sun entered into a contract with real party in interest Financial
Services Plus, Inc. ("FSP"), under which Sun was to provide automated teller machine ("ATM")
services, including modem hardware, software, and reporting of ATM transactions. The contract
contains an arbitration agreement, which provides that "[a]ny dispute or controversy arising out of
this Agreement, or its interpretation," would be resolved by arbitration.

 In March 2000, FSP sued Sun for conversion and breach of fiduciary duty. (2) Sun
answered in August 2000, reserving its right to compel arbitration, and in June 2002, filed a motion
to compel arbitration. FSP responded, arguing that its lawsuit did not allege breach of contract, but
conversion and breach of fiduciary duty, (3) both of which are torts. (4) FSP argued that the contract was
irrelevant to its causes of action, and that its dispute with Sun "has arisen entirely outside of any
contractual relationship" between the parties. The trial court denied Sun's motion to compel, and
Sun filed a motion to reconsider. The trial court denied that motion, and Sun filed a petition for writ
of mandamus and a motion for emergency relief, seeking to stay all trial court proceedings, including
a trial setting for Monday, September 9, 2002.


Discussion

 The Federal Arbitration Act, 9 U.S.C.A. §§ 1-16 (West 1999) (the "Federal Act"),
applies to all suits concerning contracts relating to interstate commerce. Moses H. Cone Mem'l
Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); Jack B. Anglin Co., Inc. v. Tipps, 842
S.W.2d 266, 269-70 (Tex. 1992); Lost Creek Mun. Util. Dist. v. Travis Indus. Painters, Inc., 827
S.W.2d 103, 105 (Tex. App.--Austin 1992, writ denied); see 9 U.S.C.A. § 2. "Commerce" under
the Federal Act is broadly construed. Lost Creek Mun. Util. Dist., 827 S.W.2d at 105; see 9
U.S.C.A. § 1 (defining "commerce" under Federal Act). When a right to arbitration is claimed under
the Federal Act, whether the dispute is subject to arbitration is determined under federal law. 
Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex. 1995). The contract in question in this
cause clearly is related to interstate commerce--FSP and Sun contracted for services for ATMs
located in several states and Sun was to give FSP's machines access to other financial networks. (5) 
Therefore, we will determine this cause under the Federal Act.

 Arbitration is heavily favored under federal and state law and should not be denied
unless it can be said with positive assurance that the arbitration clause cannot be interpreted so as
to encompass the dispute in question. Marshall, 909 S.W.2d at 898, 899. A party seeking to compel
arbitration must show (1) the existence of a valid arbitration agreement and (2) that the dispute falls
within the scope of the agreement. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001);
Nationwide of Bryan, Inc. v. Dyer, 969 S.W.2d 518, 520 (Tex. App.--Austin 1998, no pet). If the
party establishes that the dispute falls within the scope of a valid arbitration agreement, a trial court
must order the parties to arbitrate. Cantella & Co. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996);
Dyer, 969 S.W.2d at 520. Mandamus is an appropriate avenue of complaint for a party asserting that
it was erroneously denied its right to arbitration under the Federal Act. FirstMerit Bank, 52 S.W.3d
at 753; Tipps, 842 S.W.2d at 272; Pennzoil Co. v. Arnold Oil Co., 30 S.W.3d 494, 497 (Tex.
App.--San Antonio 2000, orig. proceeding). A party who is erroneously denied the right to arbitrate
has no adequate remedy at law because requiring the party to submit to trial and then appeal the
denial would defeat a main purpose of arbitration--to provide a rapid, less expensive alternative to
litigation. Marshall, 909 S.W.2d at 900; Tipps, 842 S.W.2d at 272-73.

 A broad arbitration clause gives rise to a presumption in favor of arbitration. AT&T
Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986); Lost Creek Mun. Util.
Dist., 827 S.W.2d at 105. Any doubt as to whether a dispute falls within the scope of an arbitration
clause is resolved in favor of arbitration. Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25;
FirstMerit Bank, 52 S.W.3d at 753; Marshall, 909 S.W.2d at 899; see Dyer, 969 S.W.2d at 520
("every reasonable presumption must be made in favor of arbitration"). In making such
determination, we focus on the resisting party's factual allegations rather than the legal causes of
action it asserts. Marshall, 909 S.W.2d at 900. The resisting party bears the burden of showing that
its claims are not subject to arbitration. Id. If a dispute is "factually intertwined" with arbitrable
claims, the parties should be compelled to arbitrate their dispute even if the dispute is grounded in
a legal theory distinct from a breach of contract claim. Tipps, 842 S.W.2d at 271. However, the fact
that a tort claim would not have arisen in the absence of the contract does not necessarily mandate
that the claim be arbitrated. Hou-Scape, Inc. v. Lloyd, 945 S.W.2d 202, 205 (Tex. App.--Houston
[1st Dist.] 1997, orig. proceeding). In other words, we determine whether the facts alleged in
support of the tort claim, standing alone, are independent of the contract and whether the tort claim
could be maintained without reference to the contract. Pennzoil Co., 30 S.W.3d at 498; see
Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co., 849 S.W.2d 380, 391 (Tex.
App.--Houston [14th Dist.] 1993, writ denied) (whether tort claim is subject to arbitration hinges
on whether the "particular tort claim is so interwoven with the contract that it could not stand alone
or, on the other hand, is a tort completely independent of the contract and could be maintained
without reference to the contract.").

 FSP contends that Sun has waived its right to arbitration by waiting more than two
years from being served with citation in the underlying cause before filing its motion to compel
arbitration. There is a strong presumption against finding that a party has waived its right to arbitrate
and "the burden to prove waiver is a heavy one." EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 89-90
(Tex. 1996); Pennzoil Co., 30 S.W.3d at 499. Waiver will be found only if the party seeking
arbitration "has substantially invoked the judicial process to its opponent's detriment." In re Bruce
Terminix Co., 988 S.W.2d 702, 704 (Tex. 1998). Substantially invoking the judicial process will
not waive a right to arbitration "unless the opposing party proves that it suffered prejudice as a
result." Id.; see Mancias, 934 S.W.2d at 90 ("Delay does not necessarily demonstrate prejudice.");
Dyer, 969 S.W.2d at 522 ("there must be an independant showing of prejudice"). FSP contends that
Sun delayed too long in seeking arbitration, but it does not argue, much less prove, that it was
prejudiced as a result of the delay. FSP has not shown that Sun waived its right to seek arbitration.

 FSP contends that its tort causes of action can be maintained independently of the
contract and are not related to the terms or operation of the contract. However, FSP's pleadings
indicate otherwise. In its first amended petition, FSP alleged that, "[a]lthough [Sun] complied with
the Original Contract by supplying [FSP] with some management reports, [FSP] was never supplied
with actual cash reconciliations" related to the ATMs. FSP alleged in relevant part:


IX. First Cause of Action - Breach of Fiduciary Duty.


. . . [Sun] breached [its] fiduciary duties owed to [FSP] by failing to properly, timely
and accurately protect and safeguard [FSP's] monies. Further, [Sun] failed to
safeguard and protect [FSP's] monies by accurately and timely accountings and
reconciliations.


X. Second Cause of Action - Breach of Fiduciary Duty.


. . . [Sun] further breached [its] fiduciary relationship with [FSP] by failing and
refusing to timely and properly account to [FSP] for [FSP's] monies. On more than
one occasion, [FSP] has made demand on [Sun] for the rendition or furnishing of
reconciliations of the cash accounts and cash-flows of the ATMs in question. [Sun]
failed, refused and otherwise breached [its] fiduciary duty owed to [FSP] by failing
to render or furnish cash account and cash-flow reconciliations of the ATMs. As of
the date of this petition, [Sun has] failed and refused to render and furnish complete
and accurate cash account and cash-flow accountings and reconciliations to [FSP] for
all of [FSP's] ATMs.


. . . .


XII. Third Cause of Action - Conversion.


Between February 6, 1996 and October, 1998, more than $639,269.00 of [FSP's]
monies were converted to the personal uses and enjoyment of [Sun or the other
defendants]. . . .

 FSP also alleges that it made a demand for payment on Sun on September 23, 1999. 
The letter on which FSP apparently relies to show its demand was sent to Sun and the other
defendants by FSP's general counsel. That letter states, "It has been brought to my attention that a
significant sum of money is due from one or more of you to FSP pursuant to the terms and
conditions of that one certain Hardware Purchase, Software License and ATM Service Agreement
entered into on or about February 6, 1996 by and between FSP and Sun Communications, Inc.,
and/or various agreements or undertakings entered into in connection therewith or ancillary thereto." 
The letter then demands payment to avert further legal proceedings.

 FSP's tort claims appear to be factually based entirely on alleged deficiencies in the
reports FSP was supposed to have received under the contract. Whether those reports were deficient
is entirely based on the parties' contractual agreement. Furthermore, the monies FSP entrusted to
Sun and Sun's use or alleged misuse of those monies arise under and are dependant on the terms and
conditions of the contract. FSP makes a bald legal assertion of conversion, but the facts alleged
repeatedly refer to deficient or nonexistent reports. We believe that FSP's claims are inextricably
intertwined with the contract. (6) Therefore, the trial court abused its discretion in refusing to grant
Sun's motion to compel arbitration. We conditionally grant the writ of mandamus. The writ will
issue only in the event the trial court does not stay the September 9 trial setting and enter an order
compelling arbitration of FSP's claims against Sun. We dismiss as moot Sun's accelerated
interlocutory appeal (cause number 03-02-00528-CV).


Before Justices Kidd, B. A. Smith and Yeakel

Filed: September 6, 2002

Publish
1. Sun also filed an accelerated interlocutory appeal of the trial court's denial of its motion
to compel arbitration. That appeal, styled Sun Communications, Inc. v. Financial Services Plus, Inc., 
is pending in this Court under cause number 03-02-00528-CV. See Tex. Civ. Prac. & Rem. Code
Ann. § 171.098(a)(1) (West Supp. 2002).
2. Sun and FSP entered into their contract in February 1996. In June 1996, Sun "contributed
its assets" to Sun Network Technologies, LLC. In March 1997, Sun Network Technologies assigned
its processing agreements, including the contract in question, to Suntech Processing, LLC. In
February 1998, Suntech Processing sold its assets to Transaction Network Services, Inc. FSP sued
Sun, Sun Network Technologies, Suntech Processing Systems, and Transaction Network Services. 
Sun is the only relator in the original proceeding before us. 
3. In the first paragraph of its response to Sun's motion to compel, FSP states that Sun "has
been sued for conversion and breach of fiduciary duty, . . . not for breach of contract." The next
paragraph states that FSP "specifically plead[ed] conversion, fraudulent concealment and breach of
fiduciary duty"; FSP goes on to refer only to its claims "for conversion and fraudulent concealment"
and does not make further reference to its claim for breach of fiduciary duty. FSP's first amended
petition alleges conversion and breach of fiduciary duty but does not specifically allege fraudulent
concealment; FSP does allege that Sun refused to produce accountings and reconciliations. 
4. FSP asserts that tort causes of action generally are not subject to arbitration, citing
Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co., 849 S.W.2d 380, 391 (Tex.
App.--Houston [14th Dist.] 1993, writ denied). The Hearthshire Braeswood court stated, "We
agree with appellants that causes of action sounding in tort are not automatically exempted from
arbitration." 849 S.W.2d at 391. However, the court went on to say (1) that a contractual dispute
may give rise to a tort cause of action and (2) that whether such a tort claim is subject to arbitration
is determined by examining whether the "particular tort claim is so interwoven with the contract that
it could not stand alone or, on the other hand, is a tort completely independent of the contract and
could be maintained without reference to the contract." Id. 
5. FSP contends that Sun has not shown that the Federal Act should apply, arguing that the
contract was related to money, which it further argues is not a "good" and therefore is not related to
interstate commerce under the Federal Act. However, Sun contracted to provide services and
computer hardware and software to FSP's ATMs located in several states; that the services were
related to money is not determinative. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388
U.S. 395, 401 (1967) (contract for consulting services between states constituted "transaction in
interstate commerce"); see also Lost Creek Mun. Util. Dist. v. Travis Indus. Painters, Inc., 827
S.W.2d 103, 105 (Tex. App.--Austin 1992, writ denied) (application of Federal Act "is not limited
to interstate shipment of goods, but also includes all contracts relating to interstate commerce").
6. Compare In re FirstMerit Bank, N.A., 52 S.W.3d 749, 754-56 (Tex. 2001) (arbitration
compelled because plaintiffs alleged tortious behavior related to financing contract containing
arbitration clause); Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896, 899-900 (Tex. 1995) (quoting
Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 271 (Tex. 1992)) (plaintiffs were fired by
defendant and brought defamation and conspiracy claims; claims subject to arbitration under
employment documents because plaintiffs' claims were "at least 'factually intertwined' with the
arbitrable claims"); Tipps, 842 S.W.2d at 270-71 (because plaintiff's tort claims related to alleged
misrepresentations were "factually intertwined" with contract claim, tort claims were subject to
arbitration even though "grounded in a legal theory distinct from its contract claim"); Pennzoil Co.
v. Arnold Oil Co., 30 S.W.3d 494, 498-99 (Tex. App.--San Antonio 2000, orig. proceeding) (claims
for conspiracy and tortious interference with contract were "clearly relate[d]" to distributorship
contract containing arbitration clause); and Hou-Scape, Inc. v. Lloyd, 945 S.W.2d 202, 205-06 (Tex.
App.--Houston [1st Dist.] 1997, orig. proceeding) (deceptive trade practices, misrepresentation,
negligence, fraud, defamation, and tortious interference claims all subject to arbitration clause where
they arose out of and were related to contract); with IKON Office Solutions, Inc. v. Eifert, 2 S.W.3d
688, 694-96 (Tex. App.--Houston [14th Dist] 1999, no pet.) (although plaintiff was employed by
and resigned from position with defendant company, claims for fraud, tortious interference, and
conspiracy were related to sale of his business to defendant and not to employment; plaintiff's claims
not subject to arbitration under employment contract because arbitration clause was limited in scope
and only applied if employee was terminated by defendant); and Hearthshire Braeswood, 849
S.W.2d at 391 (arbitration not required for claims concerning renovation project unrelated to
arbitrable contracts between parties for other renovations).