TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00726-CV






High Valley Homes, Inc., Appellant



v.



Douglas Fudge and Carolyn Fudge, Appellees







FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT


NO. C98-593-C, HONORABLE GARY STEEL, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N




 This is an appeal from a judgment confirming an arbitration award in a lawsuit
brought by appellees Douglas and Carolyn Fudge against their home builder, appellant High Valley
Homes, Inc., and others, arising from the allegedly defective site preparation and foundation
construction for the Fudges's new home. The arbitrator found in favor of the Fudges. High Valley
appeals but does not challenge the merits of the arbitrator's award; rather it complains that the trial
court erred in ordering binding arbitration because (1) High Valley requested only mediation and (2)
High Valley's plea in abatement rendered the subsequent order compelling arbitration void. We will
affirm the judgment of the trial court.


FACTUAL BACKGROUND


 Douglas and Carolyn Fudge entered into a residential construction contract whereby
High Valley was to construct their new home according to plans and specifications drawn by an
architect. As the site preparation and foundation work were being completed, the Fudges became
concerned about the quality of the work. When the architect confirmed their suspicions, the Fudges
demanded that High Valley stop its work. The Fudges eventually terminated the contract. High
Valley subsequently filed a mechanic's lien against the Fudges's property.

 The Fudges filed suit for declaratory relief seeking to invalidate the mechanic's lien
and claiming damages under the Texas Deceptive Trade Practices and Consumer Protection Act
("DTPA"), (1) attorney's fees and costs. See Tex. Bus. & Com. Code Ann. §§ 17.46-.50 (West 2002
& Supp. 2003). High Valley filed a "Defendant's Original Answer, Plea in Abatement and
Counterclaim." In its plea, High Valley alleged that the lawsuit was governed by the Residential
Construction Liability Act ("RCLA"), and that the Fudges failed to give written notice of their
claims as required by that act. See Tex. Prop. Code Ann. § 27.004 (West 2000). High Valley
asserted that abatement is mandatory under section 27.004 beginning eleven days after the plea was
filed and lasting until sixty days after proper notice is served. See § 27.004(d), (e). High Valley also
brought a counterclaim to recover on its mechanic's lien.

 High Valley subsequently filed a motion for mediation in which it alleged that the
contract made the basis of the lawsuit contained "a mediation clause in paragraph 24" and that the
Fudges had "failed and refused to agree to mediate this matter." A hearing was had on High Valley's
motion. High Valley admits, however, that those proceedings were not recorded. The docket sheet
reflects that the parties were ordered to binding arbitration. The trial court some months later signed
an Order to Compel Arbitration in which it found that the construction contract "provides for binding
arbitration, not mediation." It ordered the parties to binding arbitration on all claims and abated the
lawsuit until an award was issued by an arbitrator. 

 The parties' claims were submitted to arbitration in January 2000. An Award of
Arbitrator was signed on May 23 finding in favor of the Fudges in all material respects. A 
supplemental award was issued on August 17, reiterating the invalidity of the mechanic's lien. The
arbitrator found that the foundation of the house "was not built in a good and workmanlike manner,
nor was it built in accordance with the Plans in all respects. The deviations were substantial." The
arbitrator concluded that the Fudges were "legally justified in terminating" the contract because High
Valley breached the contract and breached the warranty of building in a good and workmanlike
manner. Those breaches were found to be violations of the DTPA. High Valley was also found to
have failed to cure its defective work and "failed to make any reasonable offer of settlement in
accordance with Section 27.004 et seq., Texas Property Code." As a result, the arbitrator concluded
that the statutory restrictions on damages provided by chapter 27 were not available to High Valley. 
The mechanic's lien was found to have no "force or effect" and High Valley was ordered to
indemnify the Fudges for defending against any mechanic's liens filed by its subcontractors or
materialmen. High Valley was ordered to pay $19,212.14 as consequential and statutory damages,
$15,975.18 for attorney's fees, plus costs and interest. The Fudges were ordered to pay one half of
the arbiter's fees of $7,035.00.

 The Fudges filed a motion to enter the award of the arbitrator. High Valley sought
to vacate or modify the award. On October 11, 2001, the trial court signed a judgment affirming the
award of arbitrator. High Valley appeals.


DISCUSSION


 High Valley brings two complaints on appeal. First, it contends that the court erred
in ordering arbitration in this case because it requested mediation as the RCLA allows, not binding
arbitration. Second, High Valley argues that its plea in abatement operated under the RCLA to
automatically abate the proceedings, and, therefore, the arbitration order issued during the period of
abatement was void. With regard to the first issue, determining whether mediation or arbitration was
appropriate in this case requires that we construe the residential construction contract in question. 
We review de novo questions involving contract construction. Valero Energy Corp. v. Teco Pipeline
Co., 2 S.W.3d 576, 590 (Tex. App.--Houston [14th Dist.] 1999, no pet.); Nationwide of Bryan, Inc.
v. Dyer, 969 S.W.2d 518, 520 (Tex. App.--Austin 1998, no pet.). As to the second issue, we review
issues regarding pleas in abatement for abuse of discretion. See Dolenz v. Continental Nat'l Bank,
620 S.W.2d 572, 757 (Tex. 1981). (2)


Arbitration By Any Other Name

 This case results from confusion over the meaning of the terms "mediation" (3) and
"arbitration." (4) High Valley argues that the RCLA should control this case. The RCLA authorizes,
but does not require, mediation in applicable cases. High Valley argues that the Fudges's claims
come within the purview of the RCLA (5) and, because the RCLA only provides for mediation, (6) the
trial court was without authority to order arbitration. High Valley's argument presumes that the
RCLA displaces all other law. Under High Valley's theory, neither common law or other statutorily-based arbitration could apply to the Fudges's claims in the face of the RCLA's application. Although we agree that the RCLA authorizes only standard nonbinding mediation,
we reject the proposition that the RCLA displaces otherwise binding agreements entered into by the
parties. Had the legislature intended the mediation provided for in the RCLA to preempt private
contracts and other statutory ADR schemes, it could have plainly said so. (7) We hold that the RCLA
does not preclude parties to a residential construction contract from agreeing to another form of
alternative dispute resolution ("ADR"). 


Arbitration Analysis

 Determining whether a claim is subject to binding arbitration requires a two-step
analysis; the first issue is whether an agreement exists requiring binding arbitration. In re Sun
Communications, Inc., 86 S.W.3d 313, 317 (Tex. App.--Austin 2002, orig. proceeding) (per
curiam); Nationwide of Bryan, Inc., 969 S.W.2d at 520. If an arbitration agreement exists, the
second issue is whether it covers the dispute in question. In re FirstMerit Bank, N.A., 52 S.W.3d
749, 753 (Tex. 2001). Any doubts about whether a claim is covered by an arbitration agreement are
resolved in favor of arbitration because of the state and federal policies favoring arbitration. Id.
(citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); 
Prudential Sec., Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex. 1995)); see also Sun Communications,
Inc., 86 S.W.3d at 317-18. If a court concludes that an arbitration agreement covers a claim and no
defense to the agreement is shown, then a court has no discretion but to compel arbitration and stay
its own proceedings. In re FirstMerit Bank, 52 S.W.3d at 753-54; Sun Communications, Inc., 86
S.W.3d at 317.

 While the presumption favoring arbitration applies to determining whether a claim
comes within the scope of an arbitration agreement, that presumption does not apply to the threshold
issue of whether the parties agreed to binding arbitration. See In re ACG Cotton Mktg., L.L.C., 985
S.W.2d 632, 634 n.1 (Tex. App.--Amarillo 1999, no pet.) ("[A]rbitration is a matter of contract, and
one cannot be forced to arbitrate unless he agreed to do so[;] . . . the court cannot utilize public
policy to manufacture an agreement and thereby deprive a litigant of its right to judicial resolution.");
Belmont Constrs, Inc. v. Lyondell Petrochemical Co., 896 S.W.2d 352, 356 (Tex. App.--Houston
[1st Dist.] 1995, consolidated orig. proceeding and appeal) (holding that "policy of resolving doubts
in favor of arbitration cannot serve to stretch a contractual clause beyond the scope intended by the
parties or allow modification of the plain and unambiguous provisions of an agreement." and citing
Babcock & Wilcox Co. v. PMAC. Ltd., 863 S.W.2d 255, 230 (Tex. App.--Houston [14th Dist.] 1993,
no writ)). Without an agreement to arbitrate, courts cannot compel parties to binding arbitration. 
Freis v. Canales, 877 S.W.2d 283, 284 (Tex. 1994).


The Parties' Contract

 This case revolves around the first prong of the arbitration test: whether an arbitration
agreement exists. The parties do not dispute that the Fudges's claims come within the scope of the
parties' agreement. The only question is whether that agreement requires binding arbitration. 

 Although High Valley argues that its "Motion For Mediation" requested mediation
under the RCLA, its motion plainly states that "the agreement made the subject of this suit and
attached to Plaintiff's Original Petition contains a mediation clause in paragraph 24. Plaintiff [sic]
[The Fudges] although advised and requested to mediate this matter pursuant to the contract has
failed and refused to agree to mediate this matter." (Emphasis added.) High Valley's motion clearly
sought to invoke paragraph 24.

 The parties' contract in this case misuses the term "mediation," when the obvious
intent of the parties expressed throughout the agreement was to submit any claims to binding
arbitration. The disputed portion of the construction contract in question is paragraph 24, which
states:


Mediation. All controversies arising out of this Project and this Agreement shall
be resolved through mandatory, binding mediation, which shall be in
accordance with the rules of the American Mediation Association
existing at the time the request for mediation is filed. The mediator
shall be empowered to decide the controversy and issue a binding
award, even if one or more parties declines, neglects or refuses to
participate in the mediation. The mediator shall have the authority
to award reasonable attorneys fees.



(Emphasis added.) The question in this case is whether paragraph 24 provided for ordinary
mediation or binding arbitration. 


Contract Construction

 High Valley argues that paragraph 24 requires mediation, not arbitration. In its brief,
High Valley states that the "clause is, perhaps, ambiguous," but that "neither party took a position 
of record" that it was an arbitration clause and "[n]either party invoked the Texas Arbitration Act
and requested the trial court to determine the existence of an arbitration agreement." See Tex. Civ.
Prac. & Rem. Code Ann. § 171.021(b) (West Supp. 2003). Because High Valley did not bring forth
the evidentiary record from the October 1 hearing, we will presume that the record supports the trial
court's order. See Otis Elevator Co. v. Parmelee, 850 S.W.2d 179, 181 (Tex. 1993); Hanna v.
Meurer, 769 S.W.2d 680, 681 (Tex. App.--Austin 1989, orig. proceeding). 

 We apply general common law principles governing the formation and construction
of contracts to determine whether there is an agreement to arbitrate. Trico Marine Servs., Inc. v.
Stewart & Stevenson Technical Servs., Inc., 73 S.W.3d 545, 548 (Tex. App.--Houston [1st Dist.]
2002, pet. denied); Belmont Constrs, Inc., 896 S.W.2d at 357; see also First Options of Chicago v.
Kaplan, 514 U.S. 938, 944 (1995); Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1073-74 (5th
Cir. 2002).

 There is no particular form or language required for a valid arbitration agreement, but
it must reflect the parties' intent to submit their dispute to arbitrators and to be bound by that
decision. Porter & Clements, L.L.P. v. Stone, 935 S.W.2d 217, 220 (Tex. App.--Houston [1st Dist.]
1996, orig. proceeding); Manes v. Dallas Baptist Coll., 638 S.W.2d 143, 145 (Tex. App.--Dallas
1982, writ ref'd n.r.e.). The parties must have expressed their agreement to arbitrate in clear terms. 
Trico Marine Servs., Inc., 73 S.W.3d at 548; Porter & Clements, 935 S.W.2d at 220. The language
of an unambiguous agreement (8) will be enforced according to its plain meaning unless such a reading
would defeat the intentions of the parties. Valero Energy Corp., 2 S.W.3d at 590; D. Wilson Constr.
Co. v. Cris Equip. Co., 988 S.W.2d 388, 394 (Tex. App.--Corpus Christi 1999, no pet.).

 Although paragraph 24 uses the term "mediation," reading it as a whole, we hold that
it manifests an agreement to submit disputes to binding arbitration. First, the term "mediation" is
qualified by the terms "mandatory" and "binding." These terms have specific, unambiguous
meanings. The interpretation of paragraph 24 urged by High Valley requires us to ignore significant
portions of the language in that provision. (9) Second, the provision plainly states that the "mediator
shall be empowered to decide the controversy and issue a binding award." This language could not
be more plain. It clearly describes arbitration instead of nonbinding ADR. The only reasonable
interpretation of paragraph 24 is that it is an agreement to arbitrate. We hold that the trial court
correctly construed paragraph 24 as requiring binding arbitration, rather than mediation. The trial
court enforced the provision according to its plain language.

 Furthermore, we hold that High Valley waived its complaint. During the proceedings
before the arbitrator, High Valley failed to make any objection to the arbitration proceeding, or
otherwise indicate that its participation was subject to objection. A litigant cannot remain silent to
see if the arbitration proceeding renders favorable results and then object only if the results are
unfavorable. (10) High Valley's first issue is overruled.


Plea in Abatement

 In its original answer, High Valley urged a plea in abatement alleging that the Fudges
failed to provide written notice of their claims as required by section 27.004 of the RCLA. Although
the record contains pre-suit correspondence from the Fudges that appears to satisfy section 27.004,
we will accept as true, for purposes of this discussion, High Valley's contention that the requisite
notice was not given. The pertinent portions of the RCLA, sections 27.004(d) and (e), provide:


(d) The court shall abate a suit governed by this chapter if . . . the court, after a
hearing, finds that the contractor is entitled to an abatement because the claimant
failed to provide the notice or failed to give the contractor a reasonable
opportunity to inspect the property as required by Subsection (a). A suit is
automatically abated without the order of the court beginning on the 11th day
after the date a plea in abatement is filed if the plea in abatement:


 (1) is verified and alleges that the person against whom the suit is pending did
not receive the written notice or was not given a reasonable opportunity to
inspect the property as required by Subsection (a); and


 (2) is not controverted by an affidavit filed by the claimant before the 11th day
after the date on which the plea in abatement is filed.


(e) An abatement under Subsection (d) continues until the 60th day after the date
that written notice is served in compliance with Subsection (a).



Tex. Prop. Code Ann. § 27.004(d), (e).

 Section 27.004(d)(1) requires that the plea in abatement have verified allegations of
lack of notice in order to trigger the automatic abatement. High Valley's plea did not contain a
verification. Attached to High Valley's pleading was a verification sworn to and signed by Howard
Durham averring that "he is the duly authorized agent for High Valley Homes, Inc., Defendant . . . ;
that he has read the above Defendant's Original Answer; and that the allegations contained therein
are within his personal knowledge and are true and correct." Nothing in the verification attested to
the facts contained in the plea in abatement and no affidavit was filed in support of abatement.

 The movant bears the burden of proof on a plea in abatement. Bernal v. Garrison, 818
S.W.2d 79, 82 (Tex. App.--Corpus Christi 1991, writ denied). Without evidence establishing the
requisite facts, a court errs in granting a plea in abatement. Upchurch v. San Jose, 5 S.W.3d 274,
277 (Tex. App.--Amarillo 1999, no pet.); Bernal, 818 S.W.2d at 82. In addition, failure to verify
the facts alleged in a plea in abatement effectively waives the plea. See Neeley v. Intercity Mgmt.
Corp., 732 S.W.2d 644, 648 (Tex. App.--Corpus Christi 1987, no writ). We hold that High Valley's
plea in abatement was insufficient under section 27.004(d)(1) to trigger automatic abatement. 

 Moreover, High Valley failed to obtain a hearing on the issue of notice and failed to
object to the court proceeding to other matters in the case before resolving the notice issue. In fact,
it was High Valley that subsequently filed and pursued its mediation motion without any indication
to the court that it considered the proceedings abated. Nothing in the record reflects that High Valley
ever called the notice issue to the trial court's attention. See K.C. Roofing Co. v. Abundis, 940
S.W.2d 375, 378 (Tex. App.--San Antonio 1997, writ denied). We hold that High Valley waived
its plea in abatement by failing to bring its complaint about lack of notice to the court's attention. 
High Valley's second issue is overruled.


CONCLUSION


 For the reasons set forth above, we affirm the judgment of the trial court approving
the arbitrator's award.



 

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed: April 17, 2003

1. Because this case implicates several statutes, we will abbreviate them and refer to each by
the first letters of its common name. 
2. A court abuses its discretion when it acts without reference to any guiding legal principles
or rules. See Domizio v. Progressive County Mut. Ins. Co., 54 S.W.3d 867, 876 (Tex. App.--Austin
2001, no pet.).
3. "Mediation" is commonly defined as a "method of nonbinding dispute resolution involving
a neutral third party who tries to help the disputing parties reach a mutually agreeable solution." 
Black's Law Dictionary 797 (7th ed. 2000). 
4. The term "arbitration" is usually defined as a "method of dispute resolution involving one
or more neutral third parties who are usually agreed to by the disputing parties and whose decision
is binding." Id. at 79. 
5. The RCLA applies to "any action to recover damages resulting from a construction defect,
except a claim for personal injury, survival, or wrongful death or for damage to goods." Tex. Prop.
Code Ann. § 27.002(a)(1) (West 2000). The Fudges have not disputed that the RCLA applies to
their claims.
6. Section 27.0041 allows a litigant, within ninety days after a suit is filed, to request that any
RCLA claims in excess of $7,500 be submitted to mediation; it requires that on timely motion of
either party, the court "shall order the parties to mediate the dispute." Tex. Prop. Code Ann.
§ 27.0041(b). It also provides that "[s]ection 154.023, Civil Practices and Remedies Code, . . .
appl[ies] to a mediation under this section" to the extent those provisions are not inconsistent. Id.
§ 27.0041(e). Section 154.023 of the Civil Practices and Remedies Code ("CPRC") specifies that
a "mediator may not impose his own judgment on the issues for that of the parties." Tex. Civ. Prac.
& Rem. Code Ann. § 154.023(b) (West Supp. 2003). By incorporating this section of the CPRC,
the legislature made it clear that the mediation ordered under the RCLA was to be ordinary,
nonbinding mediation.
7. Moreover, we fail to see why the general alternative dispute resolution ("ADR") statute
would not also apply in this case. That statute authorizes courts to order a number of other forms
of ADR, such as mini-trials, moderated settlement conferences, summary jury trials, and nonbinding
or binding arbitration. See id. §§ 154.002-.027 (West 1997 & Supp. 2003).
8. If a contract is worded so that it can be given a definite or certain legal meaning, then it is
unambiguous. Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998). It
is only when a contract is susceptible of more than one reasonable but conflicting interpretation that
it is considered ambiguous. See id. 
9. An important rule of construction is that the parties intend every part of a contract and a
court should not strike any portion, but should give effect to every part, unless there is an
irreconcilable conflict therein. Ogden v. Dickinson State Bank, 662 S.W.2d 330, 332 (Tex. 1983);
In re Hoover, Bax & Slovacek, L.L.P., 6 S.W.3d 646, 651 (Tex. App.--El Paso 1999, orig.
proceeding).
10. The right to object to arbitration is generally considered waived when a party participates
in the election of arbitrators without protest or fails to otherwise indicate that its participation is
subject to an objection. See Prudential Sec., Inc. v. Banales, 860 S.W.2d 594, 598 n.3 (Tex.
App.--Corpus Christi 1993, orig. proceeding) (citing Bergquist Co. v. Sunroc Corp., 777 F. Supp.
1236, 1251 (E.D. Penn. 1991)); see also Fortune, Alsweet & Eldridge, Inc. v. Daniel, 724 F.2d 1355,
1357 (9th Cir. 1983) ("[W]e have long recognized the rule that a party may not submit a claim to
arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable
result.").